

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2020 NOV 31  PM 3: 27
CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

| | | | |
|---|---|---|---|
| *Matthew J. Maddox*<br>*Assistant United States Attorney*<br>*matthew.maddox2@usdoj.gov* | *Mailing Address:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *DIRECT: 410-209-4940*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0716* |

October 23, 2020

Michael D. Montemarano, Esq.
Michael D. Montemarano, PA
3826 Paul Mill Road, Suite 204
Ellicott City, MD 21042

      Re:    United States v. Nicholas Milano White,
                Criminal No. TBD  RDB-20-0407

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Nicholas Milano White (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **October 30, 2020**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1. The Defendant agrees to plead guilty to Counts One, Two, and Three of the Criminal Information, which charge the Defendant with Conspiracy, in violation of 18 U.S.C. § 371; Emergency Benefits Fraud, in violation of 18 U.S.C. § 1040; and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offense(s)

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Criminal Information, in the District of Maryland,

    *Count One (Conspiracy)*

        a. Two or more persons entered an unlawful agreement to commit a federal offense (*i.e.*, Mail Theft, in violation of 18 U.S.C. § 1708, by stealing mail matter from an authorized depository for United States mail);

b. the Defendant knowingly and willfully became a member of the conspiracy; and

c. at least one member of the conspiracy knowingly committed at least one overt act to effect the object of the conspiracy; and

*Count Two (Emergency Benefits Fraud)*

d. the Defendant falsified, concealed, or covered up by means of a trick, scheme, or device any material fact, or made a materially false, fictitious, or fraudulent statement or representation, or made or used a false writing or document;

e. the Defendant knew that it was a material fraud or falsehood;

f. the material fraud or falsehood was made in connection with a benefit provided by the United States, or a state or local government, in connection with a major disaster declaration under 42 U.S.C. § 5170 or a major emergency declaration under 42 U.S.C. § 5191; and

g. the benefit was transported in the mail at any point in the authorization, transportation, transmission, transfer, disbursement, or payment of that benefit, or was a record, voucher, payment, money, or thing of value of the United States, or of any department or agency thereof; and

*Count Three (Aggravated Identity Theft)*

h. the Defendant knowingly transferred, possessed, or used the means of identification of another person,

i. knowing that the person was a real person,

j. without lawful authority,

k. during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), to include the violation of 18 U.S.C. § 1040.

Penalties

3.    The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 371 | 5 years | 3 years | $250,000 | $100 |
| 2 | 18 U.S.C. § 1040 | 30 years | 5 years | $250,000 | $100 |

Rev. May 2018

2

| 3 | 18 U.S.C. § 1028A | 2 years mandatory, consecutive | 1 year | $250,000 | $100 |

      a.    Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

      b.    Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

      c.    Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

      d.    Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      e.    Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      f.    Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4.    The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

      a.    If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

Rev. May 2018

b. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Criminal Information, the Defendant is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

c. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

d. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

e. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

f. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

h. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

     i.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is *not* relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Defendant's Consent to Proceed by Telephone

  5.  This Office and the Defendant agree, pursuant to the Coronavirus Aid, Relief, and Economic Recovery Act, H.R. 748 (the CARES Act), enacted on March 27, 2020, that certain federal court proceedings are permitted to proceed telephonically. The parties further agree that Section 15002(b) of the CARES Act permits the Court to conduct certain hearings in felony matters telephonically or by video teleconferencing. Further, pursuant the Amended Standing Order 2020-17, dated September 16, 2020, the Court is permitted to conduct Rule 11 plea hearings and sentencing hearings in felony cases telephonically or by video teleconferencing.

  6.  The Defendant consents, after fully consulting with undersigned defense counsel, to proceed with the Rule 11 plea hearing and the sentencing hearing telephonically or by video teleconferencing in this matter. Because an in-person or in-court proceeding in this matter cannot occur without serious jeopardy to public health and safety, the Defendant specifically requests to proceed telephonically or by video teleconferencing, and knowingly and expressly waives any and all rights to a personal appearance in court in this matter.

### Advisory Sentencing Guidelines Apply

  7.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551 through 3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

  8.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

Rev. May 2018

*Counts One and Two (Conspiracy and Emergency Benefits Fraud), and Relevant Conduct*

a. This Office and the Defendant further agree that the applicable base offense level is **7** pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2B1.1(a)(1).

b. The parties further agree that there is an increase of **14 levels**, pursuant to USSG §2B1.1(b)(1)(H), because the loss exceeded $550,000 but did not exceed $1,500,000.

c. The parties further agree that there is an increase of **2 levels**, pursuant to USSG §2B1.1(b)(2)(A), because the offense involved 10 or more victims.

d. The parties further agree that there is an increase of **2 levels**, pursuant to USSG §2B1.1(b)(11), because the offense involved the possession or use of device-making equipment or authentication features, and the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification.

e. The parties further agree that there is an increase of **2 levels**, pursuant to USSG §2B1.1(b)(12), because the offense involved conduct described in 18 U.S.C. § 1040.

f. The parties further agree that there is an increase of **2 levels**, pursuant to USSG §3B1.1(c), because the Defendant was an organizer, leader, manager, or supervisor in criminal activity.

g. This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

h. Thus, the parties anticipate a final offense level of either **26**.

*Count Three (Aggravated Identity Theft)*

i. Pursuant to USSG §2B1.6, the guideline sentence for Count Three is two years, to be imposed to run consecutively to any term of imprisonment imposed for Counts One and Two.

9. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

10. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

11. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a total sentence **no less than 60 months of imprisonment and no greater than 96 months of imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional

challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

      i.    The Defendant reserves the right to appeal the sentence of imprisonment if the total term of imprisonment exceeds 96 months; and

      ii.    This Office reserves the right to appeal the sentence of imprisonment if the total term of imprisonment is less than 60 months.

      c.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Restitution

13.    The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the parties stipulate is no more than $50,000. The defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Forfeiture

14.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

15.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in anything that constitutes money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

16.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

17.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

18.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

<u>Abandonment</u>

19.     The Defendant knowingly and voluntarily waives any and all of the Defendant's right, title, and interest in the following items seized from the person of the Defendant on March 8, 2020; the Acura TL vehicle with Virginia tag UPG2262 on March 15, 2020; 1619 E. 31st St., Baltimore, MD on June 24, 2020; 1636 McHenry Street, Baltimore, MD on June 24, 2020; or the storage unit located at 1415 Russell Street, Baltimore, MD on June 24, 2020; which the Defendant agrees constitute contraband or money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

   a. firearms, firearm ammunition, and firearm magazines;
   b. laptop and desktop computers, cell phones, and other electronic or optical storage devices, including flash drives, SIM cards, SD cards, memory sticks, and CDs, and any related power cords, chargers, cases, covers, or other accessories;
   c. blank plastic cards with magnetic stripes and/or chips;
   d. blank checks and/or check stock;
   e. printers;
   f. embossing machines and any manuals; and
   g. magnetic stripe reader/writers or encoders

(collectively, the "Abandoned Property"); and consents to its federal administrative disposition, official use, and/or destruction.

20. The Defendant understands that he would have a right to file a claim to the Abandoned Property. The Defendant agrees not to contest the vesting of title of the Abandoned Property in the United States Government and agrees to unconditionally release and hold harmless the United States Government, its officers, employees, and agents, from any and all claims, demands, damages, causes of actions, suits, of whatever kind and description, and wheresoever situated, that might now exist or hereafter exist by reason of or growing out of or affecting, directly or indirectly, the seizure or waiver of ownership interest in the Abandoned Property. The Defendant agrees to execute any documents as necessary to the waiver of right, title and interest in the Abandoned Property, including any forms necessary to effect the Defendant's waiver of ownership interest.

### Defendant's Conduct Prior to Sentencing and Breach

21. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

22. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

23. The Court is not a party to this Agreement. The sentence to be imposed within the range of 60 months to 96 months of imprisonment is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence

Rev. May 2018

the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

24. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Matthew J. Maddox
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/30/20
Date

Nicholas Milano White

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

11/4/20
Date

Michael D. Montemarano, Esq.

## **ATTACHMENT A**

## **STIPULATION OF FACTS**

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The defendant Nicholas Milano White (the "Defendant"), age 29, is a resident of Baltimore, Maryland.

Between October 2019 and June 2020, in the District of Maryland, the Defendant engaged, and conspired with others to engage, in various patterns of fraudulent and criminal conduct to include theft of United States mail, identity theft, check fraud, counterfeiting of U.S. currency, production and possession of false identification documents and credit profiles, unlawful possession of unauthorized and counterfeit access devices, unemployment insurance fraud, and unlawful possession of firearms and ammunition.

### I.    **Fraudulent Auto Loan in October 2019**

On October 11, 2019, the Defendant submitted a fraudulent application for auto financing in order to purchase a 2016 Maserati Ghibli vehicle. The credit application listed a false Social Security number for the Defendant as well as false employment and income information for the Defendant and his co-applicant. The Defendant also arranged to have fake paystubs created for attachment to the credit application as false verification of income. As a result of the fraudulent credit application, the Defendant secured financing in the amount of $30,227 for the vehicle purchase.

### II.   **Mail Thefts, Identity Theft, and Bank Fraud in February and March 2020**

The Defendant also devised schemes to defraud banks and to steal money from individuals by negotiating checks stolen from the United States mail. In February and March 2020, the Defendant deposited multiple stolen checks at ATMs of different banks located in Maryland. On February 5, 2020, the Defendant deposited a stolen check in the amount of $4,250 with the payee information altered to reflect the name of co-defendant Dominic Jerry Robinson ("Robinson") into an account at M&T Bank opened in Robinson's name. A victim postal customer had placed this check and several other checks in a mail collection box at the U.S. post office in Rosedale, Maryland in February 2020.

On March 2, 2020, the Defendant deposited a stolen check in the amount of $850 into a MECU account in the name of another person. The payee information on the check was altered to reflect the name of the account holder. A victim postal customer had placed this check and others in a mail collection box in Baltimore, Maryland.

Rev. May 2018

1

Between March 5, 2020, and March 8, 2020, the Defendant knowingly and willfully conspired and agreed with co-defendants Robinson and Cedric Jonathan McNeal Parker ("McNeal Parker") to steal U.S. mail in violation of 18 U.S.C. § 1708. The Defendant organized the mail thefts by soliciting the participation of Robinson and McNeal Parker, sending Robinson a list of locations of U.S. Postal Service ("USPS") mail collection boxes via text message, and providing a USPS Arrow key used to open the mail collection boxes.

Between March 1, 2020, and March 7, 2020, the Defendant also contacted other persons about his planned thefts of mail, boasting by text message that he had a USPS key that could be used to steal from mail collection boxes and asking at least one other person, "Wat yu need from the post office[?]" The Defendant discussed targeting tax payments and forms, bank checks, and mail containing personal identifying information ("PII") in his thefts. The Defendant also discussed prior mail thefts (claiming, for instance, he obtained 300 checks in one night stealing mail), using chemicals and implements to wash and alter stolen checks, negotiating the stolen and altered checks by depositing them into "drop" accounts at banks, and "burning" his victims' credit.

During the early morning hours of March 8, 2020, the Defendant travelled with his co-conspirators in a white sedan vehicle registered to Robinson to the Rosedale post office. The Defendant was captured on surveillance video exiting the vehicle with McNeal Parker, observing McNeal Parker open a collection box stationed at the post office and remove mail pieces from the collection box, and reentering the vehicle with McNeal Parker and the stolen mail. The Defendant and his co-conspirators then travelled to U.S. post offices located in Parkville, Towson, and Riderwood, Maryland, and stole mail from collection boxes stationed at the latter two locations.

Pursuant to a federal tracking warrant, law enforcement monitored the movements of the Defendant and his co-conspirators in the white sedan through a GPS tracking device installed in a parcel stolen from the collection box at the Rosedale post office. The white sedan fled upon pursuit by Baltimore County Police Department and eventually came to a rest in a residential area of Pikesville, Maryland. Law enforcement found the vehicle unoccupied and gloves, trash bags, and approximately 358 pieces of unprocessed U.S. mail on the ground outside of the vehicle.

Law enforcement found and arrested the Defendant at a nearby location with Robinson and seized cell phones and USB storage devices from him. The Defendant was released from custody following his arrest.

Mail stolen by the Defendant and his co-conspirators included mail deposited by at least approximately 136 postal customers and addressed to the Internal Revenue Service, the Comptroller of Maryland, and numerous other government agencies, businesses, and individuals. During the investigation of the mail thefts, approximately 48 victims reported that mail stolen by the Defendant and his co-conspirators contained bank checks or other financial instruments totaling approximately $48,938 in value. Many victims also reported that their stolen mail contained documents listing sensitive PII and/or sensitive financial information.

### III.     Searches of Electronic Devices Seized in March 2020

Upon examination of the cell phones seized from the Defendant on March 8, 2020, pursuant to a federal search warrant, the U.S. Postal Inspection Service ("USPIS") recovered text messages about the Defendant creating fake credit profiles and false identification documents for himself and other persons and conducting fraudulent bank transactions, as well as the PII of multiple identity theft victims. During a text message exchange on February 27, 2020, the Defendant sent a photo of multiple fake Maryland driver's licenses to McNeal Parker and directed him to take a photo of himself in order to create another fake driver's license. The Defendant then received several photos of McNeal Parker's face as the Defendant made detailed instructions to McNeal Parker about how to take the photos.

One of the Defendant's cell phones contained the name, address, and date of birth of victim J.S., as well as an image of a Maryland driver's license listing J.S.'s name but displaying a photo of co-defendant McNeal Parker. The phone also contained an image of a business check made payable to victim J.H.H. and stolen from the mail, as well as a note containing an image of the Defendant with the full name of J.H.H. and additional identifying information.

The Defendant's cell phones also contained numerous credit card "dumps," lists of sensitive information pertaining to at least 1,100 credit cards issued to other persons that could be used to create counterfeit copies of the cards. The Defendant had knowingly downloaded these lists from websites that illegally marketed and distributed them, and did so with fraudulent intent and without the lawful authorization of the cardholders.

Examination of the Defendant's cell phones also revealed Internet searches for business and personal check refills, printers, digital cameras, blank holograms, a credit card dump website, and a personal data broker website, as well as photos of USPS Arrow keys and numerous stolen checks. Law enforcement also recovered text messages in which the Defendant negotiated prices for the purchase of multiple firearms.

Examination of the Defendant's USB devices revealed images of U.S. currency in various denominations, which were used and/or intended to produce counterfeit U.S. currency. In at least one exchange of text messages recovered from one of the Defendant's cell phones, the Defendant attempted to sell at least $5,000 of counterfeit currency to another person, claiming at one point that he had purchased firearms with counterfeit currency.

### IV.     Emergency Benefits Fraud, Mail Fraud, and Wire Fraud in June 2020

On March 13, 2020, the President of the United States declared a national emergency concerning the outbreak of the novel coronavirus disease COVID-19. The Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) was enacted on March 27, 2020. Among other things, the CARES Act authorized issuance of Economic Impact Payments to U.S. citizens and resident aliens and provided for an expansion of regular unemployment benefits for U.S. workers.

Following his release from custody in March 2020, the Defendant resumed his engagement in fraud by making materially false representations and writings in order to steal benefits provided by the U.S. and Florida state governments in connection with the COVID-19 emergency. He did

Rev. May 2018

so using the means of identification of other persons, whom he knew and understood to be real people.

On or about June 12, 2020, the Defendant submitted a false claim for unemployment benefits in the name of victim A.G. to the Reemployment Assistance Program of the Florida Department of Economic Opportunity ("DEO") via the Internet. The Defendant listed the name and PII of A.G. in the application and provided a false mailing address for A.G. located in Baltimore, Maryland. As a result of this false application, Florida DEO issued at least two checks payable to A.G. in a total amount of $875 and mailed them to the Baltimore address. A.G., a resident of Florida, was later contacted by Florida DEO and confirmed that the claim for unemployment benefits had been submitted without her knowledge or permission.

On an unknown date no earlier than approximately May 1, 2020, the Defendant unlawfully acquired an Economic Impact Payment ("EIP") in the form of a check issued by the U.S. Treasury. The EIP check was made in the amount of $2,900 for the benefit of victims M.H. and M.I., a married couple residing in Maryland. The EIP check had been placed in the mail and addressed to the former home address of M.H. and M.I. in Baltimore, Maryland. On June 23, 2020, the Defendant fraudulently negotiated the stolen check by endorsing it with a forged signature of M.H. and depositing it into an account at SunTrust Bank. This account was fraudulently opened on or about June 14, 2020, in M.H.'s name and using his Social Security number and date of birth without his knowledge or permission. (The Defendant had previously received and negotiated his own EIP check in the amount of $1,200.)

## V. Searches of Premises and Electronic Devices Seized in June 2020

On June 24, 2020, law enforcement executed federal search warrants at the Defendant's primary residence and another residence used by the Defendant, and conducted a consent search of a storage unit used by the Defendant. Each of these premises were located in Baltimore, Maryland. During the searches, law enforcement recovered the following, among other things:

- the stolen EIP check issued to M.H. and M.I.;
- two fake Maryland driver's licenses listing M.H.'s name and his former home address but each displaying a different person's face;
- two debit cards issued in the name of M.H. by SunTrust Bank and MetaBank;
- two unemployment benefit checks issued by Florida DEO in the name of A.G.;
- stolen mail pieces and sensitive financial documents belonging to multiple victims, including aforementioned victim J.S.;
- several blank checks issued for a trust account at Chase Bank in the name of victim A.W., of which victim J.W. was trustee;
- numerous fake photo identification cards;
- handwritten notes listing information about numerous credit profiles;
- counterfeit U.S. currency printed on paper, along with paper clippings;
- fraudulently altered money orders;
- check stock intended by the Defendant to fabricate bank checks and money orders;

- several credit or debit cards displaying different names, at least one of which was determined to be counterfeit;
- equipment used to print counterfeit U.S. currency, to create counterfeit credit cards, and to fabricate false identification cards;
- a Taurus .45 caliber pistol;
- a Calico 9mm pistol with a 50-round-capacity magazine;
- two .223 caliber high-capacity magazines; and
- several rounds of ammunition.

Two cell phones and a desktop computer were seized from the Defendant on June 24, 2020, and examined pursuant to federal search warrants. One of the cell phones was found to contain notes listing numerous individuals' names and other identifying information, including aforementioned victims M.H. and J.H.H. as well as a U.S. Postal Inspector who was involved in the investigation of the Defendant's mail thefts and arrest on March 8, 2020. Information stored on the Defendant's desktop computer reflected a search of the Postal Inspector's name on a personal data broker website on March 14, 2020, following the Defendant's release from custody.

SO STIPULATED:

_____
Matthew J. Maddox
Assistant United States Attorney

_____
Nicholas Milano White
Defendant

_____
Michael D. Montemarano
Counsel for Defendant